UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AARON W. HATFIELD,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:14-cv-851
Beckwith, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in opposition (Doc. 12), and plaintiff's reply memorandum (Doc. 13).

I. **Procedural Background**

Plaintiff protectively filed his application for SSI in February 2012, alleging disability since January 1, 2012, due to spina bifida, chronic obstructive pulmonary disease (COPD), high blood pressure, restless leg syndrome, high cholesterol and sleep problems. (Tr. 227). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Peter J. Boylan. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On December 13, 2013, the ALJ issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th

Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since February 23, 2012, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: spine disorder, degenerative joint disease, asthma, chronic obstructive pulmonary disease, affective disorder, anxiety disorder, personality disorder, and a history of drug addiction (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the [plaintiff] is limited to occasional climbing of ramps and stairs. The [plaintiff] can never climb ladders, ropes, or scaffolds. He is limited to occasional stooping. He is limited to frequent kneeling, crouching, and crawling. The [plaintiff] must avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation. The [plaintiff] is limited to simple, routine, and repetitive tasks. He is also limited to simple work related decisions. The [plaintiff] is limited to occasional interaction with supervisors, coworkers, and the public. All such interactions should be on a superficial basis. The [plaintiff] is limited to tolerating occasional changes in a routine work setting.
>
> 5. The [plaintiff] has no past relevant work (20 CFR 416.965).

  6. The [plaintiff] was born [in] . . . 1960 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

  7. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 416.964).

  8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

  9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[1]

  10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since February 23, 2012, the date the application was filed (20 CFR 416.920(g)).

(Tr. 59-68).

### C. Judicial Standard of Review

  Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

  The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as a hand packer (365 jobs regionally and 319,000 jobs nationally), folder (100 jobs regionally and 47,900 jobs nationally), and inspector/tester/sorter (140 jobs regionally and 128,700 jobs nationally). (Tr. 67-68).

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff alleges that the ALJ erred by: (1) failing to include in the hypothetical question presented to the VE functional limitations to account for all of the severe impairments the ALJ found; and (2) fashioning an RFC that is not supported by substantial evidence. The Court will initially consider plaintiff's second assignment of error before evaluating his first assignment of error.

#### 1. The ALJ's RFC finding

Plaintiff alleges as his second assignment of error that the ALJ's RFC finding is not supported by the medical evidence of record. (Doc. 9 at 13-14; Doc. 13 at 1-2). Specifically, plaintiff alleges that the ALJ erred by failing to include in the RFC a restriction that plaintiff would "require occasional redirection on the job." (Doc. 9 at 13; Doc. 13 at 2). The

Commissioner argues in response that plaintiff has not cited evidence to support the inclusion of this limitation in the RFC finding. (Doc. 12 at 10-11). The Commissioner alleges that the ALJ considered the relevant evidence of record when assessing plaintiff's RFC, and plaintiff has not cited sufficient evidence to show that the ALJ's evaluation of the medical opinion evidence was flawed or that the ALJ committed legal error in fashioning his RFC. (*Id.* at 9-11).

In his decision, the ALJ gave "significant weight" to the opinion of consultative examining psychologist Dr. Thomas Heiskell, Ph.D. (Tr. 66). Dr. Heiskell examined plaintiff on May 3, 2012. (Tr. 320-24). Plaintiff's chief complaints were "memory difficulties and depressive mood." (Tr. 320). On mental status examination, plaintiff exhibited normal appearance, behavior, speech, thought and affect. (Tr. 322). His remote memory was intact. (Tr. 323). He was not able to complete serial 7's. (Tr. 323). Dr. Heiskell estimated his intellectual functioning to be in the low average range. (*Id.*). Dr. Heiskell diagnosed plaintiff with polysubstance dependence in reported partial remission, a mathematics disorder, and a personality disorder. (*Id.*). In assessing plaintiff's functional limitations, Dr. Heiskell reported that plaintiff could recall a couple of instructions after a brief delay and up to several simple instructions immediately. (Tr. 324). He also reported that plaintiff "inattentively failed to notice" an addition sign for a problem and subtracted the numbers instead. Dr. Heiskell opined that, "In general he appears able to do simple tasks and some well-learned basic multi step tasks, but he would be likely to make periodic errors and the quality of his work would need to be monitored." (*Id.*). Dr. Heiskell further opined that overall, plaintiff "appear[ed] to be able to maintain work relationships if interpersonal stresses are not pronounced in a job setting." (*Id.*).

The ALJ gave "significant weight" to Dr. Heiskell's opinion on plaintiff's recall ability;

his opinion that plaintiff appeared able to do simple tasks and some well-learned basic multi-step tasks but he would be likely to make periodic errors and the quality of his work would need to be monitored; and his opinion that plaintiff appears able to maintain work relationships if interpersonal stresses are not pronounced in a job setting. (Tr. 66, citing Tr. 324). The ALJ found that Dr. Heiskell's opinion was largely consistent with the record and it was supported by his thorough evaluation of plaintiff, which disclosed largely unremarkable findings as discussed by the ALJ in his decision. (Tr. 66; *see* Tr. 64-65). The ALJ found that some further limitations were warranted based on plaintiff's credible allegations. (Tr. 66).

The ALJ gave "some weight" to the opinions of state agency non-examining psychologists Aracelis Rivera, Psy.D., and Caroline Lewin, Ph.D. (Tr. 66). Dr. Rivera reviewed the evidence and completed a Psychiatric Review Technique and Mental RFC Assessment dated June 4, 2012. (Tr. 121-26). Dr. Rivera assessed plaintiff with mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation of extended duration. (Tr. 121). Dr. Rivera did not give weight to Dr. Heiskell's opinion. (Tr. 122) She opined that plaintiff was expected to have some limitations in his ability to understand, follow and remember directions and maintain attention, concentration, persistence, or pace, noting he was unable to complete serial 7's at his evaluation with Dr. Heiskell; he was estimated to have low average intelligence; and stress could become problematic with more than routine tasks. (*Id.*). In the RFC assessment, Dr. Rivera opined that plaintiff had some understanding and memory limitations but he can understand and remember simple instructions. (Tr. 125). Dr. Rivera also opined that plaintiff had sustained concentration

and persistence limitations and was moderately limited in his ability to maintain attention and concentration for extended periods. (*Id.*). Dr. Rivera opined that plaintiff was not significantly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in close proximity to others without being distracted by them; make simple work-related decisions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 125). Dr. Rivera concluded that plaintiff could "perform [simple routine tasks] in a setting where someone is available to occasionally redirect [him] due to some attention problems." (Tr. 125-26). On September 5, 2012, state agency reviewing psychologist Dr. Lewin affirmed Dr. Aracelis' opinion on reconsideration. (Tr. 141-42).

The ALJ gave "some weight" to the non-examining psychologists' opinions that plaintiff could "perform simple routine tasks in a setting where someone was available to occasionally redirect [him] due to some attention problems." (Tr. 66). The ALJ found these opinions were consistent with plaintiff's lack of inpatient psychiatric hospitalizations, his largely unremarkable mental status examinations, and his daily activities. (*Id.*). The ALJ discounted the opinions to the extent the non-examining psychologists opined that plaintiff needed someone to occasionally redirect him. (*Id.*). The ALJ found upon his review of the evidence that plaintiff's mental health care providers reported no impairment in plaintiff's memory, attention/concentration, or abstracting ability. (*Id.*, citing Tr. 557, 768; *see* Tr. 65).

Plaintiff alleges in the Statement of Errors that the ALJ is required to consider every medical opinion of record and weigh each opinion in accordance with the factors listed in 20 C.F.R. §§ 404.1527, 416.927. (Doc. 9 at 13). Plaintiff alleges that the ALJ erred by rejecting the non-examining psychologists' opinions that plaintiff would need to have someone available to redirect him occasionally. (*Id*. at 13-14). Plaintiff contends that the ALJ's rationale for rejecting the limitation is not supported by the evidence. Plaintiff alleges that Dr. Heiskell's opinion, which the ALJ purportedly gave "great weight," is consistent with the opinions of the non-examining psychologists and supports their opinions.[2] (*Id*.). Plaintiff alleges the ALJ's failure to include this limitation in the RFC is reversible error because the VE testified that if an individual needed to be redirected "occasionally," defined as one-third of the workday, the individual would not be able to perform competitive employment.[3] (*Id*. at 13-14, citing Tr. 107-08).

The Commissioner construes plaintiff's second assignment of error as alleging that the ALJ erred by improperly weighing the medical opinion evidence and crediting Dr. Heiskell's opinion over the opinions of the state agency psychologists. (Doc. 12 at 9-11). The Commissioner argues that the ALJ properly considered the medical opinion evidence, together with the remaining evidence of record, in fashioning plaintiff's RFC. The Commissioner alleges that plaintiff has not produced any evidence to show that, contrary to the ALJ's finding, plaintiff requires occasional redirection and that Dr. Heiskell's opinion supports this limitation.

---

[2] The ALJ actually gave "significant weight" to Dr. Heiskell's opinion. (Tr. 66).

[3] Plaintiff's counsel at the ALJ hearing stated that he could not say how the state agency psychologists intended to use the term "occasional," but counsel suggested the VE use the "Social Security definition" of up to one-third of the workday. (Tr. 108). The VE indicated he was using the definition from the Dictionary of Occupational Titles (DOT) and found that the hypothetical individual would not be able to maintain employment if that limitation were imposed. (*Id*.).

9

In reply, plaintiff emphasizes that he is not arguing that the ALJ was required to give greater weight to the opinions of the state agency psychologists than to the opinion of the consultative examining psychologist. (Doc. 13 at 2). Instead, plaintiff alleges that the non-examining psychologists' opinion that plaintiff would need occasional redirection on the job was "entirely consistent" with the consultative examining psychologist's opinion that the quality of plaintiff's work would need to be monitored, which the ALJ "significantly credited." (*Id.*). Therefore, the ALJ's failure to include a restriction in the RFC that plaintiff needs occasional redirection on the job was error and the RFC finding is not supported by substantial evidence.

The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making findings of fact and conclusions of law." 20 C.F.R. § 416.927(e)(2). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. §§ 416.945(a)(3), 416.946(c). *See also Moore v. Astrue*, No. CIV.A. 07-204-HRW, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) (the ALJ is responsible for assessing the claimant's RFC by examining all the evidence in the record) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)). Physicians render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)). The ALJ must make decisions concerning which evidence to accept when faced with conflicting evidence in the record. *Moore*, 2008 WL 2051019, at *5 (citing *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984)). However, the "ALJ must not substitute his own judgment for a doctor's conclusion without

10

relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.*, No. 1:07-cv-51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (Beckwith, J.) (citations omitted).

A review of the ALJ's opinion and the evidence of record shows that the ALJ did not err by declining to accept the state agency psychologists' opinion that plaintiff would need occasional redirection at work and by omitting that restriction from the RFC. (Tr. 64-67). The ALJ extensively reviewed the medical and other evidence in his written decision and relied on that evidence when assessing the severity of the limitations imposed by plaintiff's mental impairments. (Tr. 60-61, 64-67). The ALJ incorporated a number of limitations into the RFC to account for plaintiff's severe mental impairments, finding as follows:

> The [plaintiff] is limited to simple, routine, and repetitive tasks. He is also limited to simple work related decisions. The [plaintiff] is limited to occasional interaction with supervisors, coworkers, and the public. All such interactions should be on a superficial basis. The [plaintiff] is limited to tolerating occasional changes in a routine work setting.

(Tr. 62). The ALJ reasonably relied on objective medical findings, plaintiff's subjective reports, and plaintiff's activities in imposing these limitations and omitting the additional restriction of the need for occasional redirection assessed by Drs. Rivera and Lewin. The ALJ found no evidence showing plaintiff needs someone to occasionally redirect him on the job. (Tr. 66). To the contrary, the records of plaintiff's mental health care providers reflected no impairment in plaintiff's memory, attention/concentration, or abstracting ability. (*Id.*, citing Tr. 557, 768; *see* Tr. 65). Plaintiff has not provided any other objective medical evidence to show that the ALJ erred by failing to include in the RFC the need for occasional redirection as found by the state agency psychologists. Although plaintiff alleges that this restriction is consistent with Dr.

11

Heiskell's opinion that plaintiff would likely make periodic errors and the quality of his work would need to be monitored, the record does not support plaintiff's position. Dr. Heiskell's report did not indicate that plaintiff would need assistance focusing on simple job tasks and did not include any functional limitation that is clearly intended to address deficiencies in plaintiff's attention or concentration to perform simple job tasks. Further, although plaintiff's counsel questioned the VE at the hearing, counsel did not ask the VE whether Dr. Heiskell's finding would further restrict the type and number of jobs plaintiff was able to perform. (Tr. 106-08).

Thus, the ALJ made a decision as to plaintiff's mental RFC based on the evidence of record, including the medical opinion evidence, and supported his decision with ample citations to the record. The ALJ did not err by discounting the state agency psychologists' opinions and fashioning an RFC that incorporated only those mental limitations that the ALJ found to be substantially supported by the evidence of record. The fact that the evidence in the record could arguably support a different RFC finding is not a basis for reversal if the evidence reasonably supports the ALJ's conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). The evidence here substantially supports the ALJ's mental RFC finding. Plaintiff's second assignment of error should be overruled.

### 2. The ALJ's step five finding

Plaintiff alleges as his first assignment of error that the ALJ erred at step five of the sequential evaluation process by relying on VE testimony based on a hypothetical question that failed to accurately portray plaintiff's mental limitations. (Doc. 9 at 9-13; Doc. 13 at 1-2). The hypothetical on which the ALJ relied limited plaintiff to work involving simple, routine, and repetitive tasks; simple work related decisions; occasional interaction with supervisors,

12

coworkers, and the public on a superficial basis; and occasional changes in a routine work setting. (Tr. 104). Plaintiff contends that the ALJ's limitation to simple, routine and repetitive tasks in the RFC and hypothetical to the VE does not account for his moderate limitations in concentration, persistence or pace under *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010). Plaintiff alleges that the ALJ erroneously omitted three additional specific functional limitations from the RFC and hypothetical question to account for his moderate limitations: (1) a limitation on pace and production quotas to account for moderate difficulties with pace; (2) a restriction to jobs where he could be off task up to 20% of the day to account for limitations on maintaining concentration; and (3) a limitation to account for the likelihood that he would make periodic errors and the quality of his work would need to be monitored. (Doc. 9 at 9-12; Doc. 13 at 1).

The Commissioner contends that *Ealy* does not apply here because *Ealy* did not address whether the ALJ's hypothetical accounted for moderate limitations in the plaintiff's concentration; rather, the issue in *Ealy* was whether the hypothetical limiting the plaintiff to "simple repetitive tasks and instructions" sufficiently accommodated the plaintiff's limited ability to sustain attention to complete simple repetitive tasks for "[two-hour] segments over an eight-hour day where speed was not critical." (Doc. 12 at 7). The Commissioner contends that even if *Ealy* is applied to the facts of this case, the ALJ did not err in relying on the VE's testimony because the ALJ's hypothetical limiting plaintiff to simple, routine and repetitive tasks and simple work-related decisions sufficiently accommodated the ALJ's finding of moderate limitations in concentration, persistence or pace. (Doc. 12 at 8, citing *Smith-Johnson v. Comm'r of Social Security*, 579 F. App'x 426 (6th Cir. 2014)). The Commissioner alleges that the ALJ

13

did not err by failing to include any further limitations to account for Dr. Heiskell's finding that the quality of plaintiff's work may have to be monitored. (*Id.*).

At step five of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet her burden through reliance on a VE's testimony in response to a hypothetical question. To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the VE must accurately reflect the claimant's physical and mental limitations. *See Ealy*, 594 F.3d at 516; *Howard v. Commissioner of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). An improper hypothetical cannot serve as substantial evidence. *Ealy*, 594 F.3d at 517. Nevertheless, hypothetical questions must incorporate only the limitations that the ALJ has accepted as credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In this case, the ALJ did not err by failing to include additional mental limitations in the hypothetical question to the VE. First, the ALJ's omission of any pace-based limitations in the hypothetical is not in error. *Ealy*, the case upon which plaintiff relies, is distinguishable from the instant case. In *Ealy*, the Sixth Circuit held that where the medical opinion evidence establishes that a Social Security claimant has specific pace, speed, and concentration limitations, the ALJ must include such speed and pace-based restrictions in his RFC formulation and in the hypothetical questions posed to a VE. *See Ealy*, 594 F.3d at 516-17. The claimant's doctor in *Ealy* limited him to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day

14

where speed was not critical." 594 F.3d at 516. The ALJ adopted the doctor's opinion and specific limitations, but then streamlined the hypothetical question to include only a limitation to "simple repetitive tasks and instructions in nonpublic work settings" and omitted the two-hour pace-based restriction. *Id*. The Sixth Circuit determined that the ALJ's hypothetical question to the VE did not fully convey plaintiff's limitations because it omitted the speed and pace-based restrictions the ALJ found the claimant to have.

In *Smith-Johnson*, the Sixth Circuit distinguished *Ealy* and held that a hypothetical limiting an individual to simple, routine, and repetitive tasks adequately conveyed the plaintiff's moderate limitations in the ability "to maintain attention and concentration for extended periods." 579 F. App'x at 437. The Court noted that in *Ealy*, the hypothetical limiting the plaintiff to "simple repetitive tasks and instructions in nonpublic work settings" failed to "adequately reflect the claimant's limitations because it truncated the doctor's specific restrictions" limiting the plaintiff to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." *Id*. at 436-37 (quoting *Ealy,* 594 F.3d at 516). In contrast, the medical source in *Smith-Johnson* "did not place any concrete functional limitations on [the claimant's] abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks"; instead, the source found the plaintiff capable of performing simple tasks on a "sustained basis" despite her moderate limitations in maintaining concentration and persistence for "extended periods." *Id*. at 437. "In other words, the limitation to simple tasks portrays the tasks that she can perform without being affected by her moderate limitations." *Id*.

In this case, plaintiff alleges the ALJ "gave significant weight to medical source opinions

15

that included a limitation against jobs that required a production pace." (Doc. 9 at 12). Plaintiff appears to argue that the ALJ's RFC and hypothetical limiting plaintiff to simple, routine, and repetitive tasks; simple work-related decisions; and only occasional changes in a routine work setting (Tr. 65), failed to accommodate plaintiff's moderate difficulties in pace found by the ALJ. Plaintiff's argument is not supported by the ALJ's decision or the record. The ALJ's finding that plaintiff has "no more than moderate difficulties in concentration, persistence *or* pace" (Tr. 65) (emphasis added) is written in the disjunctive and, absent any evidence in the record of the need for specific pace-based restrictions, does not mandate the inclusion of such restrictions in the hypothetical to the VE. *Smith-Johnson*, 579 F. App'x at 437. *See also Kline v. Astrue*, No. 1:12-cv-01802, 2013 WL 1947164, at *4 (N.D. Ohio Apr. 17, 2013) (Report and Recommendation), *adopted sub nom. Kline v. Colvin*, 2013 WL 1946201 (N.D. Ohio May 9, 2013) ("[I]t is significant to note that the ALJ did not necessarily attribute all three impairments – deficient concentration, persistence, and pace – to [the claimant]. The classification is written in the disjunctive.") (quoting *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997)). Plaintiff has not identified any medical source who assessed specific or concrete pace-based restrictions like those found in *Ealy*. While the state agency psychologists opined that plaintiff was "moderately" limited in his ability to maintain attention and concentration for extended periods, they opined plaintiff was not significantly limited in his ability to carry out very short and simple instructions and in his ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 125). Dr. Heiskell assessed plaintiff's persistence with mental status tasks as adequate, and while he noted some attention problems, he found no issues related to plaintiff's ability to maintain persistence and pace to perform simple

16

tasks. (Tr. 322, 324). Plaintiff's treating mental health providers found no evidence of any impairment in his memory, attention, concentration, or abstracting ability. (Tr. 557, 768). Because the non-examining state agency reviewers, Dr. Heiskell, and plaintiff's treating mental health providers did not find a need for any specific pace-based limitations on plaintiff's ability to perform unskilled, simple, and repetitive tasks, the ALJ's failure to include such limitations in his RFC and hypothetical question to the VE was not in error.

Second, plaintiff has not pointed to evidence to support inclusion of a restriction that he would be off task 20% of the day. Plaintiff has not shown that any medical source opined that he would be off task "20%" of the day. To the extent plaintiff seeks to rely on the state agency psychologists' opinions that he would need someone available to occasionally redirect him in support of this restriction, the ALJ reasonably rejected this limitation as unsupported by the evidence of record for the reasons discussed above. Further, both plaintiff's counsel and the VE testified at the ALJ hearing that the redirection restriction was vague with regard to the frequency of the need for redirection or the type of redirection required.[4] (Tr. 108). Because the ALJ found this limitation to be unsupported, the ALJ did not err by failing to include this limitation in the hypothetical presented to the VE. *See Casey*, 987 F.2d at 1235.

Third, the ALJ did not err by failing to include a limitation to account for Dr. Heiskell's opinion that plaintiff would likely make periodic mistakes and the quality of his work would need to be monitored. Dr. Heiskell did not assess a functional limitation in conjunction with his finding. Moreover, although plaintiff's counsel conducted follow-up questioning to the VE, counsel did not question the VE about Dr. Heiskell's opinion. *See Sims v. Comm'r of Soc. Sec.*,

---

[4] The VE accepted counsel's assumption that plaintiff would need to be redirected up to one-third of the workday, but one-third was a figure proposed by counsel which concededly was not drawn from the record. (Tr. 107-08).

17

406 F. App'x 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal."). Thus, the ALJ did not err by failing to include a limitation to account for Dr. Heiskell's opinion that the quality of plaintiff's work would have to be monitored in the hypothetical posed to the VE.

The ALJ thoroughly evaluated the evidence related to plaintiff's mental impairments and expressly relied on plaintiff's largely normal mental status examinations and the consultative examiner's findings in ascertaining plaintiff's functional mental limitations. (Tr. 64). The ALJ noted that at Dr. Heiskell's consultative examination, plaintiff had difficulties with mathematical calculations and displayed moderately limited reading skills but his remote memory was intact; he recalled two of three objects after a delay; and his persistence with mental tasks was "adequate." (Tr. 61, citing Tr. 319-24). In addition, the ALJ relied on the findings of the treating mental health care and other providers that plaintiff's intelligence was average, his mood and affect were normal, and there was no evidence of any impairment in plaintiff's memory, attention/concentration, or abstracting ability. (*Id.*, citing Tr. 373, 412-424, 427-47, 557, 768). When weighing the psychological opinion evidence, the ALJ discounted the non-examining psychologists' opinions that plaintiff needs someone to redirect him on the ground plaintiff's "mental health providers found no evidence of any impairment in his memory, attention/concentration, or abstracting ability." (Tr. 66, citing Tr. 339, 557, 768). In light of the medical evidence on which the ALJ relied and the ALJ's findings related to plaintiff's specific functional limitations, the ALJ did not err by failing to include additional functional limitations

18

in the RFC finding and the hypothetical to the VE to account for plaintiff's limitations in concentration, persistence or pace.

The ALJ must fashion an RFC and hypothetical supported by the evidence of record that accounts for the moderate concentration, persistence or pace limitations of the individual claimant. The ALJ fulfilled his duty here. Contrary to plaintiff's argument, "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, slip op. at 18 (6th Cir. Jan. 12, 2016). Plaintiff cites no medical or opinion evidence showing he has any greater limitations with respect to his mental impairments than those identified by the ALJ and incorporated into the RFC and hypothetical to the VE. For these reasons, plaintiff's first assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this case be **CLOSED** on the docket of the Court.

Date: 1/15/16

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

AARON W. HATFIELD,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-851
Beckwith, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).